UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TORRI DURDEN,

          Plaintiff,                         Case No. 1:24-cv-1159

v.                                           Honorable Sally J. Berens

UNKNOWN ERWAY et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.) In an order (ECF No. 6) entered on November 19, 2024, the Court directed Plaintiff to file an amended complaint. The Court received Plaintiff's amended complaint (ECF No. 7) on December 2, 2024.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the amended complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the amended complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under

2

the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim upon which relief may be granted. The Court will also deny Plaintiff's motion for a transfer to a new facility (ECF No. 5) as moot.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Manistee, Manistee County, Michigan. Plaintiff sues the following ECF personnel in their official and personal capacities: Assistant Deputy Wardens Unknown Erway and Unknown Krause, Residential Unit Manager Unknown Turner, and Prison Counselor Unknown Larson. (Am. Compl., ECF No. 7, PageID.36.)

Plaintiff alleges that on August 23, 2024, he was placed on temporary segregation status at ECF following an assault. (*Id.*, PageID.37.) Plaintiff contends that the cell in which he was placed had black mold, and that other inmates had black mold in their cells as well. (*Id.*) Plaintiff submitted a kite to Defendant Larson "to no avail," so he submitted a grievance. (*Id.*) Three weeks later, Plaintiff still had not received a response to his grievance, so he sent a kite to the grievance coordinator, who responded that he had not received Plaintiff's grievance. (*Id.*)

On October 2, 2024, Plaintiff had a monthly interview with the Security Classification Committee (SCC). (*Id.*) Plaintiff states that Defendants Krause, Larson, and Turner were present at the SCC interview. (*Id.*) At that time, Plaintiff told Defendants Krause, Larson, and Turner about the black mold in his cell, as well as the fact that the vents in his cell had not been cleaned in over a year. (*Id.*) In response, they told Plaintiff to clean it with cleaning supplies. (*Id.*) Plaintiff replied that the supplies given to inmates were not adequate to remove black mold. (*Id.*)

Following the SCC interview, Plaintiff sent a kite to Defendant Erway about the issue, but Defendant Erway "did nothing also." (*Id.*) Plaintiff also sent a kite to the grievance coordinator, stating that he was submitting a new grievance and noting the officer he was giving the grievance to in order to ensure receipt by the grievance coordinator. (*Id.*) Plaintiff's grievance concerned the presence of black mold and the lack of linen exchange. (*Id.*) Ultimately, Defendant Larson denied Plaintiff's grievance and sent it to Defendant Turner for review. (*Id.*) Plaintiff claims that

4

Defendants Larson and Turner never interviewed him regarding the grievance "yet marked that [Plaintiff] was interviewed on the grievance." (*Id.*)

Plaintiff goes on to aver that during this time, he went to the healthcare department for "spontaneous[,] impulsive coughing," but was only given pain pills for chest pains and was denied an X-ray. (*Id.*, PageID.38.) Plaintiff alleges that as of the date of his amended complaint, he had been held in the cell containing black mold for 94 days pending a transfer. (*Id.*) Plaintiff wrote to the ombudsman, who came to see Plaintiff. (*Id.*) The ombudsman told Plaintiff that he would speak to Defendant Erway and that the transfer should not be taking so long. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's amended complaint to assert Eighth Amendment claims premised upon the presence of black mold, the lack of linen exchange, and the lack of medical care provided. The Court also construes Plaintiff's complaint to assert constitutional claims related to the handling of his grievances and kites. Plaintiff seeks injunctive relief in the form of cleaning of the cells and vents, as well as an immediate transfer. (*Id.*, PageID.39.) He also seeks compensatory and punitive damages. (*Id.*)

## II.    Motion for Transfer to New Facility

When Plaintiff submitted his consent to magistrate judge jurisdiction, he also requested a transfer to a new facility. (ECF No. 5, PageID.30.) Plaintiff, however, is no longer confined at ECF and is now confined at URF. Accordingly, because Plaintiff has received the relief he seeks, his motion for a transfer (ECF No. 5) will be denied as moot.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

5

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Am. Compl., ECF No. 7, PageID.36.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*,

6

491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages and injunctive relief. (Am. Compl., ECF No. 7, PageID.39.) However, as noted above, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. Therefore, Plaintiff fails to state a claim upon which relief may be granted as to his monetary damages claims against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh

7

Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102.

In the present action, Plaintiff does not allege the existence of an official policy or practice or suggest that the activities alleged in the complaint are likely to occur to him again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm. Moreover, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990

WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at ECF, which is where he avers that Defendants are employed. Thus, Plaintiff cannot maintain his claims for injunctive relief against Defendants, and the Court will dismiss these claims.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### B. Personal Capacity Claims

#### 1. Eighth Amendment Claims

The Court has construed Plaintiff's amended complaint to assert Eighth Amendment claims premised upon the presence of black mold, the lack of linen exchange, and the lack of medical care provided.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v.*

9

*McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

      **a.**    **Black Mold**

Plaintiff's primary Eighth Amendment claim concerns the presence of black mold in his cell in segregation at ECF. Plaintiff contends that during his SCC interview, he spoke to Defendants Krause, Larson, and Turner about the mold, and that they told him to clean it with the supplies provided to inmates. (Am. Compl., ECF No. 7, PageID.37.) Plaintiff responded that the

supplies provided to inmates were insufficient to remove black mold. (*Id.*) Plaintiff also submitted multiple kites about the issue to Defendant Erway, to no avail. (*Id.*)

It is certainly possible that exposure to black mold might be sufficiently serious to satisfy the objective requirement, but simply alleging the presence of black mold is not enough. *See, e.g.*, *McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2–4 (W.D. Mich. Sept. 10, 2007) (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006); *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005)), *report and recommendation adopted*, (W.D. Mich. Oct. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate). Courts have looked to several factors to determine if the presence of black mold constitutes a risk of serious harm. The cases indicate that exposure to black mold satisfies the objective standard if the prisoner alleges physical injury as a result of the exposure. *See, e.g.*, *Whiteside v. Smith*, No. 22-1071-SHM-tmp, 2023 WL 4410510, at *8 (W.D. Tenn. July 7, 2023) ("Whiteside's allegation of harm from the Shower Conditions could plausibly satisfy the objective component of the Eighth Amendment . . . ."); *Henderson v. Parin*, No. 3:22-cv-228, 2023 WL 369954, at *3 (S.D. Ohio Jan. 24, 2023) (report and recommendation concluding that the complaint must be dismissed "because plaintiffs have failed to allege that they suffered a physical injury that was caused by exposure to black mold"; case voluntarily dismissed by Plaintiff after entry of the R&R); *Brown v. Penick*, No. 1:22-CV-P99-GNS, 2022 WL 16702802, at *7 (W.D. Ky. Nov. 3, 2022) (finding that "because Plaintiff does not allege that the presence of mold in his cell caused him a health problem or created a substantial risk to his health . . . this claim must be dismissed for failure to state a claim upon which relief may be granted"); *Rogers v. MacLaren*, No. 1:20-CV-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020) ("Plaintiff does not suggest that the mold is airborne, and he does not allege that

11

the presence of mold caused him a health problem or created a substantial risk to his health. As a consequence, Plaintiff's allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health.").

This Court considered a claim regarding black mold exposure in *Patrick v. Schroeder*, No. 2:23-cv-26, 2023 WL 2522057 (W.D. Mich. Mar. 15, 2023), *aff'd*, No. 23-1313, slip order at 2–3 (6th Cir. Oct. 5, 2023). In that case, the plaintiff alleged that his unit had black mold within the walls, making it "uninhabitable for over 10 [years]." *Id.* The Court resolved the plaintiff's Eighth Amendment conditions of confinement claim as follows:

> Here, nothing in Plaintiff's complaint suggests that the mold is airborne. Although Plaintiff states that he has experienced breathing issues, he attributes that to the mold without providing any further explanation or any supporting allegations that could permit the Court to infer that the mold "created a substantial risk to his health." *See Rogers v. Maclaren*, No. 1:20-cv-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020). Plaintiff's general "allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health." *Id.* Plaintiff's allegations, therefore, fail to meet the objective prong of the deliberate indifference standard.

*Patrick*, 2023 WL 2522057, at *5. The Sixth Circuit Court of Appeals affirmed the dismissal stating: "The district court did not err by dismissing Patrick's Eighth Amendment claims. In the body of his complaint, Patrick did not make specific factual allegations against any defendant showing that they knew of and disregarded an excessive risk from the alleged mold." *Patrick v. Schroeder*, No. 23-323, slip order at 2–3 (6th Cir. Oct. 5, 2023).

The same result is appropriate here. As in *Patrick*, Plaintiff does not set forth any facts suggesting that the black mold in his cell was airborne. Moreover, while Plaintiff contends that he experienced chest pains and coughing, he attempts to contribute those conditions to the black mold without providing any further explanation or supporting allegations. Furthermore, while Plaintiff alleges that he spoke to Defendants Krause, Larsen, and Turner about the black mold and wrote several kites to Defendant Erway about the issue, nowhere in Plaintiff's complaint does he set

forth facts indicating that he told the named Defendants about any health conditions that he was experiencing because of the mold. Plaintiff's general allegations that he informed Defendants about the presence of mold in his segregation cell are insufficient to show the existence of a sufficiently serious risk to Plaintiff's health that was ignored by Defendants. Even if Defendants acted negligently by not addressing Plaintiff's concerns regarding the mold, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *See Farmer*, 511 U.S. at 835. For the foregoing reasons, Plaintiff's Eighth Amendment claims against Defendants regarding the black mold in his segregation cell will be dismissed.

### b. Lack of Linen Exchange

Within his amended complaint, Plaintiff takes issue with the lack of linen exchange during his time in segregation at ECF. (Am. Compl., ECF No. 7, PageID.37.)

As an initial matter, Plaintiff does not allege any facts from which the Court could infer that any of the named Defendants were aware of and personally responsible for the lack of any linen exchange during Plaintiff's time in segregation. In any event, "[i]n the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment." *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011). Furthermore, the denial of clean bedding for a period does not constitute an Eighth Amendment violation. *See Miller v. Palmer*, No. 99-2352, 2000 WL 1478357, at *2 (6th Cir. Sept. 27, 2000). Here, Plaintiff does not allege any injury from a lack of clean linen; accordingly, even assuming that Plaintiff did not receive clean linen during his stay in segregation, the Court concludes that Plaintiff's vague allegations are insufficient to show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Accordingly, any Eighth Amendment claims premised upon the lack of linen exchange will be dismissed.

### c.      Medical Care

In his complaint, Plaintiff vaguely suggests that when he went to healthcare for his "spontaneous[,] impulsive coughing," he was given only pain medication for chest pains and did not receive an X-ray. (Am. Compl., ECF No. 7, PageID.38.)

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

14

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, even presuming that Plaintiff has set forth sufficient facts regarding an obvious medical need, Plaintiff's complaint is devoid of facts from which the Court can infer that any of the named Defendants were deliberately indifferent to that need. Notably, Plaintiff has not set forth any facts suggesting that Defendants, who are custody and administrative officers at ECF, were personally involved in any healthcare decisions made regarding Plaintiff. Moreover, Plaintiff has not set forth any facts suggesting that any of the named Defendants were even aware of the coughing that Plaintiff contends he experienced. For these reasons, any purported Eighth Amendment claims against Defendants premised upon the denial of adequate medical care will be dismissed.

### 2.    Claims Premised upon Handling of Grievances and Kites

The Court also construes Plaintiff's complaint to assert constitutional claims premised upon Defendants' handling of his grievances and kites.

As an initial matter, courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, any intended procedural due process claim

15

regarding Plaintiff's use of the grievance procedure and Defendants' responses to his grievances or kites will be dismissed.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances or their failure to respond to Plaintiff's kites. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference

of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for the foregoing reasons, any intended constitutional claims against Defendants premised upon their handling of Plaintiff's grievances and kites will be dismissed.

## Conclusion

The Court will deny Plaintiff's motion for a transfer to a new facility (ECF No. 5) as moot. Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

An order and judgment consistent with this opinion will be entered.

Dated: March 18, 2025                     /s/ Sally J. Berens
                                          SALLY J. BERENS
                                          United States Magistrate Judge